NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VELMA SALINAS-NIX,**
*Petitioner,*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent.*

---

2012-3209

---

Petition for review of Merit System Protection Board in No. DA-0752-10-0513-I-1.

---

Decided: July 15, 2013

---

VELMA SALINAS-NIX, of Boerne, Texas, pro se.

NICHOLAS JABBOUR, Trial Attorney, Commercial Litigation Branch, Civil Division United States Department of Justice, Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director.

---

Before MOORE, LINN, and O'MALLEY, *Circuit Judges.*

PER CURIAM.

Velma Salinas-Nix petitions for review a final order of the Merit Systems Protection Board (Board) affirming the Army's indefinite suspension of Ms. Salinas-Nix. *Salinas-Nix v. Dep't of the Army*, No. DA-0752-10-0513-I-1 (M.S.P.B. July 19, 2012) (*Final Order*). For the reasons discussed below, we *affirm*.

## BACKGROUND

Ms. Salinas-Nix is a Supervisory Contract Specialist employed by the Army. Her position requires her to maintain a top secret level security clearance. The Army suspended Ms. Salinas-Nix's security clearance and indefinitely suspended her from her position pending an investigation that she may have engaged in tax fraud. Specifically, Ms. Salinas-Nix was accused of "structuring" bank deposits so as not to trigger a financial institution's reporting requirements. *Final Order*, slip op. at 2; *see* 31 U.S.C. § 5324. These allegations eventually led to an indictment of Ms. Salinas-Nix and her husband. *See* Appendix G. The charges include conspiracy and filing false tax returns.

Ms. Salinas-Nix challenged her indefinite suspension before the Board. The Administrative Judge (AJ) explained that, "[i]n order to support an adverse action based on the suspension of a security clearance, the agency must establish that (1) a security clearance was required for the position in question; (2) the appellant's security clearance was suspended; and (3) the appellant was granted minimum due process protection." *Salinas-Nix v. Dep't of the Army*, No. DA-0752-10-0513-I-1, slip op. at 3 (M.S.P.B. Nov. 17, 2010) (citing *Dep't of the Navy v. Egan*, 484 U.S. 518, 530–31 (1988)). The AJ found that the first two elements were not in dispute, and that the Army established the third element. Specifically, the AJ concluded that the Army complied with the procedural requirements of 5 U.S.C. § 7513(b). *Id.* at 8. Therefore,

the AJ upheld the Army's indefinite suspension of Ms. Salinas-Nix.

The Board affirmed the AJ's decision. The Board considered "whether the [Army] afforded the appellant minimum due process with respect to her constitutionally-protected property interest in her employment." *Final Order*, slip op. at 5. It weighed "(1) [t]he private interest affected by the official action; (2) the risk of erroneous deprivation of the interest through the procedures used, and the probable value, if any, or additional or substitute procedural safeguards; and (3) the government's interest." *Id* at 6 (citing *Gargiulo v. Dep't of Homeland Sec.*, 118 M.S.P.R. 137, ¶ 11 (2012) (citing *Gilbert v. Homar*, 520 U.S. 924, 931–32 (1997) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)))). The Board determined that the Army did not violate Ms. Salinas-Nix's constitutional Due Process rights.

Ms. Salinas-Nix appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We can only set aside the Board's decision if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2012); *see Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003). We review the Board's legal determinations *de novo*. *Welshans v. U.S. Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008).

The threshold issue in this case is whether an employee is entitled to constitutional Due Process when the adverse action results from the suspension of the employee's security clearance. The Army contends that the Board erred when it afforded constitutional Due Process rights to Ms. Salinas-Nix. It argues that the Board's analysis effectively entails a review of the underlying

merits of the security clearance determination, which *Egan* prohibits. The Army contends that the Board should have considered only Ms. Salinas-Nix's statutory due process rights under 5 U.S.C. § 7513(b).

The Army's position has merit. In order to assert a constitutional Due Process claim, an employee must have a "constitutionally protected 'property' interest" in continued employment. *Homar*, 520 U.S. at 928. We have repeatedly held, however, that "a federal employee does not have a . . . property interest in access to classified information, and therefore the revocation of a security clearance does not implicate constitutional procedural due process concerns." *See, e.g.*, *Robinson v. Dep't of Homeland Sec.*, 498 F.3d 1361, 1364–65 (Fed. Cir. 2007) (citing *Jones v. Dep't of the Navy*, 978 F.2d 1223, 1225–26 (Fed. Cir. 1992) (citation omitted)); *see also Egan*, 484 U.S. at 528 ("It should be obvious that no one has a 'right' to a security clearance."). Given our precedent, the Board's approach is open to doubt. But we do not need to resolve the issue here. Under either standard, the Army did not violate Ms. Salinas-Nix's rights.

Ms. Salinas-Nix argues that the Board erred in concluding that the Army followed due process when it decided to suspend her indefinitely. She contends that, when the Army interviewed her about the suspected fraud, she was not aware that she was being investigated. Ms. Salinas-Nix argues that, in any event, there is no evidence that she ever admitted any wrongdoing. Further, Ms. Salinas-Nix argues that the Army did not give her an opportunity to review some of the materials that it relied upon to prepare the Notice of Proposed Suspension (the Notice). Specifically, she contends that the Army withheld a report prepared by its Criminal Investigation Division (CID) until after her indictment.

Ms. Salinas-Nix also contends that the Army violated 5 C.F.R. § 752.404(g), which prohibits agencies from considering reasons for a proposed action other than those specified in the Notice. She argues that the deciding

official improperly relied on information in the rescinded version of the Notice and on newspaper articles about the criminal accusations against Ms. Salinas-Nix. Ms. Salinas-Nix contends that the procedural errors were harmful and requests a new proceeding before the Board.

Ms. Salinas-Nix's arguments largely challenge the adequacy of the evidence that led to the suspension of her security clearance. But the Army is correct that these issues implicate the merits of suspending the clearance, which the Board had no power to review under *Egan*. Because Ms. Salinas-Nix was undisputedly suspended due to a loss of the security clearance required by her position, the Board's review was limited to whether the Army afforded her the due process protections of § 7513(b). *See Egan*, 484 U.S. at 530; *see also Hesse v. Dep't of State*, 217 F.3d 1372, 1376 (Fed. Cir. 2000). Like the Board, we have no authority to review the propriety of the suspension of Ms. Salinas-Nix's security clearance. Accordingly, we consider her due process arguments.

The applicable statute provides that "[a]n employee against whom an action is proposed is entitled to—

> (1) at least 30 days' advance written notice . . . stating the specific reasons for the proposed action;

> (2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

> (3) be represented by an attorney or other representative; and

> (4) a written decision and the specific reasons therefor at the earliest practicable date."

5 U.S.C. § 7513(b) (2012); *see also* 5 C.F.R. § 752.404 (2010). We have held that, in security clearance cases, "section 7513(b) entitles an employee to notice of the reasons for the suspension of his access to classified

information when that is the reason for placing the employee on enforced leave." *King v. Alston*, 75 F.3d 657, 661 (Fed. Cir. 1996). The notice must contain "sufficient detail to allow the employee to make an informed reply." *Brook v. Corrado*, 999 F.2d 523, 526 (Fed. Cir. 1993) (internal quotation marks omitted).

The Army complied with § 7513(b). The Notice explained in detail why the Army suspended Ms. Salinas-Nix's security clearance and why the Army proposed to indefinitely suspend her from her position. *See* Appendix C. For example, the Notice set forth several alleged instances of Ms. Salinas-Nix's structuring of bank deposits so as "to avoid reporting requirements." *Id.* at 2. It further claimed that Ms. Salinas-Nix acknowledged engaging in this structuring and that this conduct "raises questions regarding [her] reliability, trustworthiness, and good judgment." *Id.* Finally, the Notice explained that Ms. Salinas-Nix's position "is one of unique responsibility to supervise and provide procurement approvals . . . and requires . . . access to classified and confidential information." *Id.*

Ms. Salinas-Nix's detailed response to the Notice through her attorney reinforces the conclusion that the notice met the requirements of due process. *See* Supp. Appendix; *see also* 5 U.S.C. § 7513(b)(2), (3). The response reflects Ms. Salinas-Nix's clear understanding of the reasons for the proposed indefinite suspension and the options available to her. Even if Ms. Salinas-Nix is correct that the Army had more information about her financial transactions than it included in the Notice, the Army did not violate § 7513(b) because it adequately and timely apprised her of the reasons for the proposed action and gave her an opportunity to respond.

The Army also provided an adequate and timely Notice of Decision (the Decision), as required by § 7513(b)(4), setting forth the reasons for the indefinite suspension. *See* Appendix B. The Decision explained that a preponderance of the evidence showed that Ms. Salinas-Nix

engaged in criminal structuring of bank transactions, suggesting lack of trustworthiness. *Id.* at 1. The Decision further noted that Ms. Salinas-Nix had "access to classified and confidential information which might be used for improper personal gain by one who is not forthright and trustworthy." *Id.* The Decision explained that these concerns led to the suspension of Ms. Salinas-Nix's security clearance and concluded that that Ms. Salinas-Nix's indefinite suspension from her position "is fully warranted based on . . . the security [clearance] suspension." *Id.* at 2, 3. These explanations and the documents prepared and relied upon by the CID, which were provided to Mr. Salinas-Nix, satisfy the statutory due process requirements. *See* Appendices H, I.

We also conclude that the Army did not violate 5 C.F.R. § 752.404. That regulation, which implements 5 U.S.C. § 7513(b), states that an agency may "consider only the reasons specified in the notice of proposed action and any answer of the employee or . . . her representative" in its final decision. 5 C.F.R. § 752.404(g). Although Ms. Salinas-Nix faults the Army for consulting various allegedly extraneous documents and newspaper articles, she does not explain why the reasons for her indefinite suspension differ from those given in the Notice. The Army is correct that the reasons are the same—structuring of bank transactions and the resulting suspension of Ms. Salinas-Nix's security clearance. Because the Army did not violate the applicable statute and regulation, the Board's affirmance of the Army's indefinite suspension of Ms. Salinas-Nix was in accordance with law.

Finally, the Board did not err in concluding that the Army afforded adequate constitutional Due Process rights to Ms. Salinas-Nix. In analyzing agency procedures for compliance with Due Process, we weigh the private interest affected by the official action; the risk of erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the government's interest.

*See Gilbert v. Homar*, 520 U.S. 924, 931–32 (1997). With respect to the first *Homar* factor, the Board explained that the procedures that Ms. Salinas-Nix received properly accounted for her significant private interest in not being suspended from her position. *See Final Order*, slip op. at 6. Because the Army provided Ms. Salinas-Nix with a detailed post-suspension notice and a meaningful opportunity to reply, we see no error in that determination. With respect to the second *Homar* factor, the Board determined that the Army "had reasonable grounds to support the indefinite suspension action." *Id.* at 7. We see no error in the Board's analysis of this factor because the Army explained that it was suspending Ms. Salinas-Nix due to loss of her security clearance, which resulted from a criminal investigation into Ms. Salinas-Nix's structuring of bank transactions. With respect to the third *Homar* factor, the Board explained that the Army's "compelling interest in withholding national security information from unauthorized persons . . . arguably weighs in favor of the government's authority to take immediate action." *Id.* at 6–7 (citing *Egan*, 484 U.S. at 527). We agree. The compelling government interest at stake in this case reinforces the conclusion that the procedures Ms. Salinas-Nix received were constitutionally adequate.

### CONCLUSION

We have considered Ms. Salinas-Nix's other arguments and find them to be without merit. Because the Board did not err in its conclusion that the Army complied with due process when it indefinitely suspended Ms. Salinas-Nix, we *affirm*.

### **AFFIRMED**

### COSTS

No costs.